ROBERTS v. JONES.

1. TORT—COUNTER-CLAIM arising out of tort can not be set up as a defense to an action for damages for tort.
2. RES JUDICATA—CIRCUIT JUDGES.—Findings by a Circuit Judge on appeal from magistrate, where he does not hear the case on the merits, are not binding on a succeeding Judge on appeal from new trial ordered by the succeeding Judge.
3. LANDLORD AND TENANT—AGRICULTURAL PURPOSES.—Small tract of farming land and dwelling were rented for fifteen months ending with a calendar year, rent payable in part in money and in part in agricultural products, *held,* that renting was for agricultural purposes.
4. APPEAL.—FINDINGS by Circuit Court on appeal from magistrate court can not be reviewed by this Court.
5. LANDLORD AND TENANT—MANURE.—Where lands are rented for agricultural purposes, the manure on the premises at end of tenancy made by tenant's stock is property of the landlord.

Before TOWNSEND, J., Anderson, July, 1904.   Affirmed.

Action by James T. Roberts against J. T. C. Jones in magistrate court.   From judgment on circuit for plaintiff on appeal from magistrate, defendant appeals.

The rent contract in question is as follows, omitting the formal parts :

"This indenture, made and entered into between * * * witness : That the party of the first part has agreed to rent, and does hereby rent, to the party of the second part * * * consisting of dwelling house and about twenty acres of land, it being all the land in cultivation of what is known as the Jno. Catlett place, and also about two acres on the old Ander-

son place, said Jas. T. Roberts reserving the house on the Anderson place, for the term of fourteen months, beginning on the 25th day of October, 1900, and ending on the 25th day of December, 1901. And the party of the second part hereby agrees to rent, and does rent, the said premises for the period hereinbefore set forth, and agrees to pay as rent therefor the sum of $120, 1,000 pounds of middling lint cotton and 60 bushels of cotton seed, on the 15th day of October, 1901. And he further agrees to take good care of premises, and deliver them to the lessor at the expiration of this lease in as good repair as when he received them, ordinary wear and tear excepted."

*Messrs. Breazeale & Rucker,* for appellants, cite: *Counter-claim should have been allowed:* Code of Proc., 171; 11 S. C., 338; Pom. on Rem., sec. 798; 43 S. C., 64; 22 Ency., 1 ed., 392. *Manure made of products not raised on leased premises belongs to tenant:* 31 L. R. A., 698.

*Mr. A. H. Dagnall,* contra, cites: *Tort cannot be set up as counter-claim to a tort:* 25 Ency., 2 ed., 591, notes 1 and 2, 595; 20 S. C., 258; Pom. Code Rem., sec. 790; 6 Rich. L., 159; 2 Bay, 651; 18 S. C., 109; 21 S. C., 275; 25 S. C., 506; 57 S. C., 493. *Manure cannot be removed by tenant:* 31 L. R. A., 698; 25 L. R. A., 699.

April 15, 1905. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This action has had four trials in the magistrate court, two before Magistrate B. F. Wilson, and two before Magistrate J. A. O'Neal. The verdict of the jury in the last case tried before Magistrate O'Neal was in favor of the defendant for $1 on his counter-claim, from which judgment the plaintiff appealed, and the matter came on to be heard before Judge Townsend, in the Court of Common Pleas for Anderson County, who reversed the decision of the magistrate court, and gave the plaintiff a

judgment for $12; and from this judgment the defendant appealed on the following grounds:

"1. Because his Honor erred in deciding that the counter-claim of the defendant could not be set up in the case, under section 171 of the Code of Civil Procedure, when he should have decided that said claim was one 'arising out of the contract or transaction' upon which the plaintiff brought his action, and was properly pleaded under said section of the Code.

"2. Because his Honor erred in deciding that said counter-claim could not be set up, when he should have decided that said claim was 'connected wtih the subject of the action,' to wit: the rights of the parties to the manure on the leased premises during the term of the tenancy under the contract, and that the magistrate was correct in so holding.

"3. Because his Honor erred in deciding that said counter-claim could not be set up, when he should have decided that plaintiff's action was one arising on a contract, was sued on as such, and that the counter-claim being one arising out of a contract, was properly pleaded.

"4. Because his Honor erred in deciding that even if the counter-claim could be sustained that the manure was the property of the plaintiff, and he was entitled to its use, when he should have decided that under the contract the leased premises was the defendant's during the term of his tenancy, and the defendant was entitled to the use of the manure on said premises for use on said premises, and the plaintiff had no right to remove it, especially as said manure was not reserved by the contract, and a part of it was made by defendant's own stock.

"5. Because his Honor erred in deciding that the premises leased were used for agricultural purposes, when said question adjudicated by Judge Purdy that a portion of the premises leased were for agricultural purposes, and should have decided that there is nothing on the face of said contract to show that the premises were leased for agricultural purposes, and that the evidence showed the primary object of the rent-

ing was that the defendant might secure a residence for himself and family near his place of business, as county dispenser.

"6. Because his Honor erred in finding as a matter of fact, 'that all the manure removed by the plaintiff was the property of the plaintiff,' when he should have found that under the lease contract, the manure on the premises or to be made thereon was not reserved, and the defendant was entitled to its use upon the rented premises, and the plaintiff had no right to take any manure therefrom, whether made by his own horse, which was permitted to be kept there for accommodation, or by the defendant's stock, and that the defendant had a right of action for the value of the manure so removed.

"7. Because his Honor erred in finding that the manure removed by the defendant was plaintiff's, when he should have decided that even if the contract was an agricultural one, that plaintiff could only claim the manure made in the usual mode of agriculture from products of the farm, and that the defendant was entitled to the manure made by stock in excess of that maintained by the products produced elsewhere, and that he did not remove more than said excess. When the undisputed evidence shows that he bought feed for his stock amounting to four times as much as was produced on farm, and that he only worked fifteen acres of land, a little more than a half of a one-horse crop, and kept one horse, one mule and a cow, and only removed the manure made in three months of the fifteen months of the tenancy.

"8. Because his Honor erred in practically finding that the landlord in case of a tenancy has the right to enter the premises of his tenant, and remove therefrom any manure on the leased premises and thus deprive the tenant of using it on the rented premises, and that all manure made by the tenant, even from stock not used on the premises for agricultural purposes belongs to the landlord, and that the tenant has no right or title thereto whatever.

"9. Because his Honor erred in finding that the manure

removed by the defendant was of the value of $12, when the plaintiff admitted he had been buying it for fifty cents per load, which would make it of the value of only $2.

"10. Because his Honor erred in deciding as a fact that the manure taken by defendant was plaintiff's, when he should have decided that a jury had found by this verdict under a proper declaration of the law, that the defendant was entitled to the manure, and that the evidence supported the verdict."

It will be better to reproduce the judgment on circuit, which was as follows:

"This case came on for trial before me on July 4, 1904, on appeal from magistrate court, from a verdict and judgment rendered in favor of the defendant for $1 against the plaintiff. The plaintiff appeals to this Court on numerous exceptions from said verdict and judgment. This was an action brought by the plaintiff, J. T. Roberts, against the defendant, J. T. C. Jones, for $12, the alleged value of certain manure, which the plaintiff alleged was his property, and that the defendant converted the same to his own use, to the damage of plaintiff $12. The defendant, at the trial before the magistrate, set up as his defenses a general denial, and also a counter-claim against the plaintiff for other certain manure, which the defendant alleged was his property, and that plaintiff converted it to his own use to the damage of defendant $12. The plaintiff demurred to the counter-claim, and the magistrate overruled the demurrer. The magistrate was in error in sustaining the counter-claim, but should have sustained the demurrer to the counter-claim, as under section 171 of the Civil Code, vol. 2, 1902, a counter-claim cannot be set up in this case. But even if a counter-claim could be pleaded in this action, the evidence at the trial plainly shows that the manure removed by plaintiff was on his own property, and he was entitled to its use, and the jury erred in not so finding. The evidence was not sufficient for the jury to find for the defendant on the counter-claim. I find as a matter of fact that all of the manure removed by plaintiff from the leased premises was the prop-

erty of the plaintiff.    The premises leased was used for agricultural purposes, and in such cases, the manure made upon the land should be left upon the land by the tenant.    I find as a matter of fact that the manure which plaintiff alleges was his property in his complaint was made upon the leased premises.    I find as a matter of fact that the defendant took and disposed of the manure, as it is alleged in complaint, and that the manure was of the value of $12.    The exceptions of the plaintiff should be sustained.

"It is the order of the Court, that the verdict and judgment of the magistrate's court be, and the same is hereby, reversed, and it is the further order of the Court that the plaintiff have judgment against the defendant for the sum of $12."

We will consider the above quoted exceptions in their order.

1.  The defendant contends that the Judge erred in holding that the defendant's counter-claim could not be set up in the case, under section 171 of the Code of Civil Procedure, when he should have decided that the claim was one arising out of contract or transaction, upon which the plaintiff brought his action.    The Circuit Judge held that the plaintiff's demurrer to the counter-claim should have been sustained, we suppose, upon the ground that the counter-claim of the defendant was for a tort, just as the claim of the plaintiff was for a tort.    This Court held in the case of *Simkins* v. *Railway Company*, 20 S. C., 258, 269, that another counter-claim in tort cannot be interposed as a defense.    The Court said, in the last case cited: 'The alleged tort of the defendant, which constitutes the foundation of plaintiff's action, is the negligent running of defendant's cars by which his horses were killed; the alleged tort of plaintiff, which is the foundation of defendant's counter-claim, was the alleged illegal presence of his horses on the railroad track, by which the train was thrown from the track and the engine injured. The injury to the engine in point of time, it is true, followed

in quick succession that of the injury to the horses; but it cannot be said that the illegal presence of the horses on the track, which is the foundation of defendant's counter-claim, arose out of the negligence of the defendant in running the cars, which is the foundation of plaintiff's action. Nor was it connected with the subject of plaintiff's action."

Section 171 provides: "The counter-claim mentioned in the last section, must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.

"2. In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

Subdivision (2) plays no part in this discussion, because it refers to a contract as its basis. Our attention is confined to subdivision (1). In the case of *Simkins* v. *Railway, supra,* the Court says: "In most of the States having the Code, similar provisions to ours in reference to the counter-claims have been adopted, and in some of the States, the terms 'transaction,' 'arising out of,' 'subject of action,' and 'connected therewith,' have been much discussed. The decisions are not uniform, and from them it is difficult to arrive at a definite and satisfactory conclusion. In some of the States, especially New York, the tendency has been to limit and narrow the meaning of these terms. In others, the construction has been more liberal. In the first, the principles of former doctrine of set-off and recoupment, which applied to actions *ex contractu* entirely, have controlled, more or less; in the latter, it has been held that the terms, 'transaction' and 'subject of action,' mean something more than contract, and that, consequently, counter-claims may embrace other causes of action besides those arising in contract. This whole subject is fully discussed with great ability and perspicuity

in Mr. Pomeroy's second edition of his Remedies and Remedial Rights, at section 734, *et seq.,* 772. And at section 790, will be found a discussion of the 'cases in which the demands of both parties are for damages arising from tort,' in which he says: 'Counter-claims of damages from torts when attempted to be enforced against causes of action for damages also arising from other torts, have, with few exceptions, been rejected . The Courts have been inclined to adopt, or at least assume as a general principle, that such a cross demand can never arise from the transaction set forth by the plaintiff as the foundation of his claim.' "

While the Circuit Judge has held in effect the foregoing, and that the testimony was not sufficient, even if the defendant's counter-claim was admissible, to allow the jury to find for the defendant on his counter-claim, and he found, as a matter of fact, that all the manure moved by plaintiff from the leased premises was the property of the plaintiff, yet we agree with the Circuit Judge that the plaintiff's demurrer should have been sustained, and this ground of appeal, therefore, is overruled.

(2) This is set aside, being included in the first ground of appeal. It is, therefore, overruled.

(3) and (4). For the same reasons are these exceptions set aside, and we, therefore, overrule them.

(5) Appellant claims that the Circuit Judge erred in deciding that the premises leased were used for agricultural purposes. Whatever Judge Purdy may have held in the first trial before the Circuit Court, his ruling was not binding upon Judge Townsend, because confessedly he did not hear the case upon its merits, and any purpose that the defendant might have had in renting the dwelling house as a place of residence could have no effect, for it was apparent from the contract that it was rented for agricultural purposes. We, therefore, overrule this exception.

(6) We do not see that the question here raised could have any effect in reversing Judge Townsend's decision, because

his finding of fact is not reviewable by us. This is a law case, and as such the findings of fact by the Circuit Judge are beyond our powers of control; so, therefore, when the Circuit Judge held that all of the manure removed by the plaintiff was the property of the plaintiff, such finding is conclusive upon us. As we understand this case, the manure was removed by the defendant from the plaintiff's premises at the very conclusion of his connection with the rented premises, and could not, therefore, be entitled to be used by the defendant upon the rented premises. This exception is, therefore, overruled.

(7) In the 19th vol. of A. & E. Ency. of Law, page 927, it is said: "Manure made in the usual course of husbandry upon a farm is so attached to and connected with the realty that in the absence of any express stipulation to the contrary, it becomes appurtenant to and is treated as realty." In the ground of appeal the appellant-defendant seems to admit that the lands were used for agricultural purposes. That being so, the manure on the premises at the conclusion of the lease by the defendant was a part of the realty, and should not have been disturbed by the appellant. This exception, therefore, is overruled.

(8) We do not see how the question here suggested by the appellant is pertinent to this inquiry. The counter-claim that the defendant sought to set up has been decided to have been improperly so done. Therefore, this question does not arise and this exception is overruled.

(9) The value fixed by the Circuit Judge on the manure, for which he held the defendant responsible to the plaintiff, was ascertained from the testimony by the Circuit Judge to be $12. We have no power to interfere with such valuation. This exception is, therefore, overruled.

(10) We do not see how we can look at what was the verdict of the jury as to the ownership of the manure taken by the defendant. That is a question of fact and we have

no right to look back at the verdict of the jury. This excep-
tion is overruled.

It is the judgment of this Court, that the judgment of the
Circuit Court be, and it is hereby, affirmed, and the action is
remitted to the Circuit Court for the enforcement of such
judgment.